Robert W. Sadowski
Sheila Gowan
Raphael Katz
DIAMOND MCCARTHY LLP
The New York Times Building
620 8th Avenue, 39th Floor
New York, New York  10018
Tel. No.: (212) 430-5400

Andrew K. Cuddy
Law Office of Andrew K. Cuddy
145 E. Genesee Street
Auburn, New York  13021
Tel. No.: (716) 868-9103

Attorneys for the United States of America *ex rel.* John and Jane Doe

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA
*ex rel.* JOHN and JANE DOE,

                Plaintiffs/Relators

                - against -

THE NEW YORK STATE SCHOOL
DISTRICTS (*See* Appendix A); NEW YORK
CITY DEPARTMENT OF EDUCATION;
COUNTIES OF NEW YORK STATE (*See*
Appendix B); ANDERSON CENTER FOR
AUTISM; BOCES QUESTAR III; GENESEE
VALLEY / WAYNE FINGER LAKES
EDUCATIONAL TECHNOLOGY
SERVICES; and THE CENTRIS GROUP,

                Defendants.

**COMPLAINT**

**FILED *IN CAMERA* AND UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730(b)(2)**

        Plaintiff the United States of America *ex rel.* John and Jane Doe, by and through John

and Jane Doe's attorneys, Diamond McCarthy LLP and the Law Office of Andrew K. Cuddy,

allege for their complaint as follows:

## PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.     This is a civil action brought by relators John and Jane Doe on their behalf and on behalf of the United States of America ("United States") against the New York State School Districts (*See* Appendix A); New York City Department of Education; Counties of New York State (*See* Appendix B); Anderson Center for Autism; BOCES Questar III; Genesee Valley / Wayne Finger Lakes Educational Technology Services; and The Centris Group (collectively "Defendants") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "False Claims Act"), to recover damages sustained by, and penalties owed to, the United States. In connection with claims for and receipt of the payment of funds disbursed under the Medicaid Program, 42 U.S.C. §§ 1396 *et seq.*, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and conspired to commit the above acts, all in violation of 31 U.S.C. §§ 3729(a)(1)(A),(B), (C) & (G).

2.     These claims are based on Defendants' submissions of false and fraudulent claims to the New York State Medicaid Program for payment of funds provided by the Federal Government and New York State for Targeted Case Management services and occupational therapy, physical therapy psychotherapy and speech pathology provided to developmentally disabled school-aged children in New York.

3.     More specifically, Defendants engaged in a scheme whereby they fraudulently billed Medicaid for Targeted Case Management services to be provided to developmentally disabled

2

students enrolled in New York State and New York City schools. When, in fact, such services were not provided. To effectuate this scheme, Defendants designed, distributed and implemented software programs that automatically generated a claim to Medicaid for Targeted Case Management services whenever special education professionals input data relating to Individualized Education Programs for developmentally disabled students, regardless of whether Targeted Case Management services are ever provided.

4.      Defendants' false claims and fraudulent actions caused the Federal Government and the New York State Medicaid Program to be damaged by hundreds of millions of dollars, and deprived developmentally disabled school-aged children the provision of medical, social, psychological, educational, financial, transportation and other services necessary for this vulnerable population.

5.      Targeted Case Management services are designed to ensure that developmentally disabled school-aged children receive the services and care that they need. Such services are critical because a case manager then takes on burdens and responsibilities that parents are unable to handle. Indeed, one report by Advocates for Children found that upwards of 90% of services needed by developmentally disabled children in New York City were not provided because parents are unequipped to take on the burdens that should be by law offered to parents and performed by a professional case manager. Therefore, Defendants' failure to provide Targeted Case Management services, despite billing for them, has harmed many New York State families, leaving developmentally disabled children without the services they need.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) (False Claims Act), 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff).

7.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. §§ 1391(b) (1)

and (2), because at least one of the Defendants resides or transacts business in the Southern

District of New York and all Defendants reside in New York, and because a substantial part of

the events or omissions giving rise to the claims occurred in this District.

8.      This action is not jurisdictionally precluded by the public disclosure bar of the False

Claims Act, 31 U.S.C. § 3730(e) (4).  Upon information and belief, there has been no "public

disclosure" of the matters alleged herein and this action is not "based upon" any such disclosure.

Through their interactions with various employees of the Defendants and other persons, Relators

have "direct and independent knowledge" of the instant allegations.  In addition, Relators have

"voluntarily provided," and offered to provide, this information to the Government before the

filing of this complaint.  Therefore, to the extent any of these allegations is deemed to have been

based upon a public disclosure, Relators are an "original source" of this information within the

meaning of the False Claims Act, and are expressly excepted from the public disclosure bar.

## THE PARTIES

9.      Plaintiff is the United States of America on behalf of its agency the United States

Department of Health and Human Services ("HHS") and the Center for Medicaid and Medicare

Services ("CMS").  The United States is a real party in interest in this action because the United

States provides 50% of the funding for the Medicaid Program in New York State.  The State

provides 50% of the funding for the Medicaid Program in New York State.

10.     Relators John and Jane Doe are individuals and the parents of a school-aged child with

developmental disabilities.  Relators reside in New York State.

11.     Defendants listed in the caption and Appendices A and B to this Complaint are the school

districts, municipalities and county governments that have participated in New York State's

School Supportive Health Services and Preschool Supportive Health Services Programs ("SSHS"

and "PSSHS," respectively) and have submitted claims for reimbursement for Targeted Case
Management services.

12.    Anderson Center for Autism ("Anderson") is a not-for-profit organization that provides
programs for children and adults with autism and other developmental disabilities. Anderson is
located in Staatsburg, New York.

13.    Genesee Valley / Wayne Finger Lakes Educational Technology Services ("EduTech") is
one of 12 Regional Information Centers ("RICS") in New York State. These Centers provide
administrative and instructional technology services to the state's school districts. EduTech
services 47 school districts in the 8 counties that comprise the Genesee Valley and Wayne-Finger
Lakes BOCES (Board of Cooperative Educational Services) region. EduTech employs a staff of
100 and has offices at 7115 W. Main, LeRoy, New York and 131 Drumlin Court, Newark, New
York. EduTech developed and provides to school districts the software program ClearTrack
200, a web-based system designed to manage data associated with the Special Education process.
ClearTrack 200 also provides automatic electronic submission of Medicaid reimbursement
claims associated with the provision of special education.

14.    BOCES Questar III provides more than 275 instructional and support services to 23
school districts with about 40,000 students in Rensselaer, Columbia and Greene counties of New
York State. Questar III also provides additional services to more than 630 school districts and all
37 BOCES in New York State. Questar III's headquarters are located at 10 Empire State
Boulevard, Castleton, New York.

15.    The Centris Group ("Centris") provides technology services to education professionals
and specializes in web-based Special Education administrative software. Centris provides "IEP-
New York," (also know as IEP Direct) a New York State-specific software application to

manage Special Education programs and Individualized Education Programs ("IEP"). More than 550 of the school districts and BOCES in New York State use IEP Direct. The Centris Group is located at 100 Merrick Road, Suite 418 East, Rockville Centre, New York 11570. The Centris Group also provides Medicaid Direct for use by New York State Schools. Medicaid Direct imports data from other education systems to generate claims for reimbursement from Medicaid for special education services. Medicaid Direct is fully integrated with IEP Direct.

## THE LAW

### The Medicaid Program Covers Targeted Case Management

16.    Pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, the Medicaid Program pays the health care costs of persons qualified to receive benefits due to the person's medical condition, economic condition or other eligible factor. Medicaid costs are shared among the Federal Government and participating states.

17.    In New York State, the Department of Health ("DOH") is the State agency responsible for operating the Medicaid Program. Within DOH, the Office of Medicaid Management is responsible for administering the Medicaid Program. DOH uses the Medicaid Management Information System, a computerized payment and information reporting system, to process and pay Medicaid claims, including school health claims.

18.    Section 411(k) (13) of the Medicare Catastrophic Coverage Act of 1998 (P.L. 100-360) authorized Medicaid payments for medical services provided to children under the Individuals with Disabilities Education Act ("IDEA"). Covered services may include physical therapy, occupational therapy, speech pathology/therapy, psychological counseling, nursing, and transportation services.

19.    The IDEA further ensures every child with a disability has available a free appropriate public education that includes special education and related services. Part B of the IDEA requires the development and implementation of an individualized education program ("IEP") that addresses the unique needs of each child aged 3 through 21 with a disability. The IEP identifies the special education and related services needed for the child with a disability.

20.    While some of the services identified on a child's IEP (*e.g.*, a related service such as physical therapy) may be covered under Medicaid, the development, review and implementation of the IEP is part of a process that is required by Part B of the IDEA.

21.    DOH and the New York State Education Department developed the SSHS and PSSHS Programs. Under the SSHS program, students aged 5 to 21-years-old receive health services from their local school districts. Under the preschool program, children aged 3 to 4 years-old receive school health services through county social service agencies.

22.    "Case management" consists of services that assist eligible beneficiaries in securing medical and other services. Case management is **not** the direct provision of care and services, but a separate and reimbursable class of services for Medicaid beneficiaries that identifies necessary services, assists in locating the services, identifies providers, and monitors the provision of care and services. Case management services are different from other Medicaid reimbursable care and services and can include educational, social, financial and uncovered health services. 18 NYCRR § 505.16(c) (2011). Case management has existed as a separate, reimbursable class of medical assistance since 1986. In most states, Case management is viewed and treated as an administrative service/cost, and it has been subject to much scrutiny by CMS for the failure of providers to maintain adequate documentation of the services. In New York, however, Case management is viewed and billed as a "related service," which, upon information

and belief has not received the same CMS scrutiny of the required substantiating documentation as Case management services in those states that characterize Case management as "administrative services."

23.    "Targeted case management" ("TCM") is Case management services targeted to specific population subgroups.  TCM is provided in addition to occupational therapy, physical therapy, speech therapy, counseling, skilled nursing services and their corresponding evaluations.

24.    TCM activities are specified procedures such as taking the client's history, identifying the individual's needs, gathering documents and information to form a complete assessment, development and periodic revision of a specified care plan, referral and related activities, and monitoring and follow-up activities to ensure that services are performed as specified in the plan or performed as part of a comprehensive assessment and periodic reassessment of the need for medical, educational, social, financial or other services.

25.    The development, review and implementation of the IEP is different from Medicaid Case management or TCM, which also may be needed by the child.  72 Fed. Reg. 68086 (Dec. 4, 2007).  An IEP may identify the need for Case management to coordinate access to a broad range of medical service providers from several disciplines, and also may identify needs for Case management to gain access to non-medical services.  *Id.* at 68087.  As with other Medicaid covered services, such as physical, occupation, or speech therapy, identified on the IEP, such Case management services may be covered under Medicaid when furnished to a Medicaid-eligible child by a Medicaid-qualified provider who assists in gaining access to and coordinating all needed services.  *Id.*

8

26.     TCM requires Case management to be a one-on-one activity and "[t]o facilitate

coordinated care, case management is a covered Medicaid service only when a single case

manager comprehensively addresses all of the individual's service needs." *Id.*

27.     "While Medicaid funding could be available for the costs of a Medicaid-qualified case

manager who may be operating in a school . . . in assisting IDEA-eligible children in gaining

access to needed services, including those identified in their IEP . . . , coordinating the provision

of those services, and facilitating the timely delivery of services, Medicaid case management

services must remain separate and apart from the administration of the IDEA programs." *Id.*

28.     "Medicaid may pay for those case management services where IDEA and Medicaid

overlap, but not for administrative activities that are required by IDEA but not needed to assist

individuals in gaining access to needed services. These would include activities such as writing

an IEP . . . , providing required notices to parents, preparing for or conducting IEP . . . meetings,

or scheduling or attending IEP . . . meetings." *Id.*

29.     Section 504 of the Rehabilitation Act of 1973 requires school districts to provide to

students with disabilities, appropriate education services designed to meet the individual needs of

such students to the same extent as the needs of students without disabilities are met; that is, to

provide an equal opportunity for students with disabilities to participate in or benefit from

educational aids, benefits, or services." *Id.*   Accordingly, Federal Financial Participation

("FFP") in New York's Medicaid Program, "is not available for any case management activities

not included in an IEP . . . but performed solely based on obligations under section 504 of the

[Rehabilitation Act] to ensure equal access to the educational program or activity." *Id.*

Accordingly, FFP is not allowed for the Medicaid reimbursement of "the administrative

activities of any other non-medical program, specifically including activities that constitute the

administration of special education programs under [the] IDEA." 42 C.F.R. § 441.18(c) (4). 72

Fed. Reg. at 68087. Thus, school districts may not claim Medicaid reimbursement for TCM

when the school-based provider is administering an IEP, and not providing targeted case

management by a designated case manager.

30.    TCM has extensive provider recordkeeping requirements and requires separate plan

amendments for each class of Case management assistance groups.  42 C.F.R. §441.18(a) (7).

31.    The targeted groups for Case management in New York are:

- Foster children;

- Individuals in the Prenatal Care Assistance Program;

- Seriously and persistently mentally ill individuals;

- Developmentally disabled individuals;

- Pregnant women and infants in high infant mortality areas;

- Pregnant and parenting teenagers;

- Children ages 0 to 2 who are enrolled in the Early Intervention Program; and

- Individuals with HIV/AIDS.

32.    Developmentally disabled children in special education are also referred to as Target

Group I.  The child welfare population is defined as "[c]hildren 3 through 21 years old who are

federally eligible Medical Assistance Early and Period Screening, Diagnosis, and Treatment

recipients and for whom free and appropriate education is provided under the Individuals with

Disabilities Education Act or Section 504 of the Rehabilitation Act of 1973.  *See* 18 NYCRR §

505.16.  For this population TCM includes:

- Assessing the child's needs;

- Arranging for the delivery of needed services as defined in the assessment;

- Assisting the child and his/her family in accessing the needed services;

- Tracking the child's progress by making referrals, tracking appointments, following up on services rendered, periodically reassessing the child's needs;

- Advocating on behalf of the child;

- Consulting with service providers or collateral contacts in determining the status or progress of the child's plan; and

- Arranging for crisis assistance, such as making arrangements for emergency referrals.

42 C.F.R. § 440.169(d) (1); (2); (3); and (4).

33.    In New York City, as a result of the Jose P. Consent Decree, the New York City Department of Education was required to issue a "Related Service Authorization" letter to parents of a child with disabilities, whose related services could not be implemented by the school the child attends.  The Related Service Authorization letter in essence informs parents to find a private service provider.  Had TCM been provided, (1) a case manager would have assisted parents in their requests for permission to exceed the applicable rates for necessary services that schools could not provide; and (2) a case manager could have assisted parents to locate appropriate service providers, arrange for transportation, arrange for financial assistance and help submit reimbursement claims.

34.    No payment to the provider of case management services can be made for authorized services unless such claim is supported by documentation of the time spent in providing services to each recipient.  18 NYCRR § 505.16(h) (2011).

35.    The documentation required to bill Medicaid for case management falls into two general categories:  Provider information and child information.  New York State Education Department

webpage, Billing/Claiming Guidance, *Provider Qualifications and Documentation Requirements*, http://www.oms.nysed.gov/medicaid/billing_claiming_guidance/BILLING_Claiming_guidelines_sept_2010.PDF. The provider must supply its certification and licensing, its "Under the Direction of" documentation if applicable, and its Provider Agreement and Statement of Reassignment. *Id.* The required child information includes their Medicaid eligibility, referral to the Committee on Special Education, IEP, Consent for Release of Information, referrals or written orders for services as required, and special transportation as necessary. Furthermore, each encounter must be documented with the proper, encounter specific information. *Id.*

36.    A separate case record must be established for each recipient of Case management services and must document each Case management function provided. 18 NYCRR § 505.16(c).

37.    As of February 2008, Medicaid reimbursed for TCM services for school-aged children with developmental disabilities as follows:

- TCM Initial IEP Development (Initial Review—New Referral Meeting) (CPT Code 5491);

- TCM Annual IEP Review (CPT Code 5492);

- TCM Triennial/Reevaluation IEP Review (CPT Code 5493);

- TCM Amended/Requested IEP Review (CPT Code 5494); and

- TCM Ongoing Services Coordination (CPT Code 5495).

NYS OMIG SSHSP/PSHSP Medicaid in Education Unit, *Medicaid in Education Alert Issue #08-3*, Feb. 28, 2008.

38.    An **Initial Review** (5491) is provided for a student who is <u>not classified</u> as disabled and may require special education services. In New York City Initial Review is reimbursed at $1,333, and in the rest of New York State at $775.

39.    An **Amended/Requested Review** (5494) is provided for a <u>classified</u> student, receiving special education services and may require a formal evaluation in at least one discipline area.  In New York City Amended/Requested Review is reimbursed at $1,333, and in the rest of New York State at $520.

40.    An **Annual Review** (5492) is provided for a <u>classified</u> student, once within every 12-month period to determine continued eligibility and the appropriateness of special education services being provided.  In New York City an Annual Review is reimbursed at $347, and in the rest of New York State at $265.

41.    A **Triennial Review** (5493) is provided for a <u>classified</u> student, at a minimum of once within a 36-month period or whenever a review is requested where more than one discipline area requires formal evaluations.  In New York City a Triennial Review is reimbursed at $1,333, and in the rest of New York State at $492.

42.    Reimbursement for TCM is barred when Case management activities are an integral component of another Medicaid service, *e.g.*, child welfare, foster care, juvenile justice, or special education.

43.    In addition, reimbursement for TCM is barred when there is more than one designated case manager.

44.    To claim reimbursement for TCM for a school-age student with a disability, an appropriate committee meeting must be convened and appropriate members of the Committee or Subcommittee on Special Education who conducted the review must have attended the Committee meeting.

45.    The child or the child's parent must be informed of the opportunity to receive and must elect to receive Case management services.  In addition, parents must be offered choice in

connection with the provision of designated service providers. Upon information and belief, no school districts are notifying parents that TCM is being provided. Upon information and belief, in addition, prior to 2009, no parents of children eligible to receive Medicaid were asked to sign consents to bill Medicaid for school services as required.

46.    A unit of TCM service provided in connection with an Individualized Education Program includes:

- At least one contact by the student's service coordinator or Committee on Special Education, with the student's parent or other responsible individual, on the student's behalf, relating to the development of the initial IEP, and

- The activities leading up to and including the writing of the IEP, and

- Conducting and convening the CSE conference to develop the IEP, and

- Notifications to parents as per Part 200 of the Regulations of the Commission of Education, and

- For ongoing service coordination, a Service Coordinator must be assigned to each student in writing, the parent should agree to the service coordination, and all staff involved with the student must be notified of the Service Coordinator assigned to the student.

**The Federal False Claims Act**

47.    The False Claims Act, as amended, provides, in pertinent part, that:

any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A), (B) . . . or (G); . . . or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than
[$5,500] and not more than [$11,000]... plus 3 times the amount of damages
which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

## THE FACTS

**Overview of the False and Fraudulent Schemes to Improperly Bill Medicaid for TCM**

48.    New York State School Districts and the New York City Department of Education are

claiming reimbursement for delivering special education and classifying the preparation, review,

and modification of IEP services, as IEP services as well as TCM, when no case management

services are actually being provided to students with developmental disabilities.

49.    In 2005, New York expended an average per beneficiary rate for TCM services of

$2,026—one of the highest rates in the country.  In 2005, there were 103,755 TCM Medicare

beneficiaries costing the New York State Medicaid Program $210,161,965 for that year alone.

However, little or no TCM services were provided to developmentally disabled school-age

children in New York State.

50.    In New York, with the exception of New York City, TCM services for special education

students are recorded, monitored and billed through web-based software systems created by

EduTech and The Centris Group.  Upon information and belief, New York City manually inputs

Medicaid claims data for TCM services.

51.    EduTech's ClearTrack 200 special education management system was designed by

Broome-Tioga BOCES, in partnership with New York State Education/VESID (Vocational and

Educational Services for Individuals with Disabilities) to meet school districts' need to maintain

Special Education data and provide report generation capabilities.

52.     ClearTrack 200 tracks current, projected and historical information purportedly in accordance with the Committee on Special Education and Committee on Pre-School Education process of the regulations of the Commissioner of Education.

53.     ClearTrack 200 allows for student-specific data entry by Special Education providers. ClearTrack 200 can be integrated with other software modules to perform Medicaid billing.

54.     The touted features of ClearTrack 200 include the following:

- Data entry from any Internet browser;
- Tools to develop unlimited, customized, state-compliant IEPs anytime, anywhere;
- SSL data encryption;
- Full Medicaid Tracking;
- Transfer data between various student management systems;
- Submit electronic STAC and state-mandated PD reports;
- Access complete student history data;
- Full Historical Data Tracking;
- Full AIS and 504 Tracking;
- Standard and Custom Goal Banks;
- System Reports and Custom Report Writer; and
- Customizable Teacher security for viewing IEPs on-line with respect to Chapter 408 and No Child Left Behind legislation.

55.     The Centris Group provides different but functionally similar software to report and monitor special education. The Centris Group developed IEP Direct exclusively for New York

16

State Special Education professionals.  IEP Direct enables 24/7 access to Special Education data from any computer connected to the web.

56.    IEP Direct features include the following touted capabilities:

- IEP Direct uses state-of-the-art security technology to assure that private records remain private;

- A comprehensive library of goals and objectives fully aligned with New York State learning standards;

- Electronic submission of New York State PD reports and STAC reports;

- Integrated Medicaid billing; and

- Integrated AIS tracking.

57.    The New York State School Districts use the IEP Direct and ClearTrack 200 systems to automatically bill for TCM services that are never provided.

58.    The New York City Department of Education does not use either IEP Direct or ClearTrack 200, but upon information and belief manually processes special education management and Medicaid claims for TCM services that are never provided.

**Representative Examples of Fraudulent Billing of TCM by School Districts**

IEP Direct Baldwinsville Central School District

59.    The Baldwinsville Central School District does not provide TCM because it was deemed too time consuming and complex and would require the designation of at least one staff member as a targeted case manager.

60.    The Baldwinsville Central School District uses IEP Direct for generating and tracking individualized education plans.  Subscribers to IEP Direct also have access to a companion system, Medicaid Direct, that automatically generates billing for services reimbursable through

17

Medicaid. Upon information and belief, under these linked systems, when a school district's special education professional creates an IEP for a special education student and the service provider inputs that information to IEP Direct, the billing system automatically generates a Medicaid billing for TCM whether or not any TCM service was provided in connection with creating the IEP.

61.    Through IEP Direct, the Baldwinsville Central School District fraudulently billed Medicaid for TCM services that were never provided.

62.    Upon information and belief, each of the other School Districts that used IEP Direct similarly used the software to fraudulently bill Medicaid for TCM services that were never provided.

<u>Taconic Hills Central School District</u>

63.    The Taconic Hills Central School District uses ClearTrack 200 to record, report, and claim Medicaid reimbursement for special education services to developmentally disabled students.

64.    The ClearTrack 200 program is used by school districts to submit biographical and service information to a RIC for Medicaid Reimbursement Processing.

65.    Medicaid reimbursement through ClearTrack 200 requires the entry of biographical information for the students which is sent to CNYRIC (Central New York Regional Information Center), which then compares the file to the DOH files for Medicaid eligible students. In response to the receipt of a student's file, CNYRIC sends a file to the school district providing a CIN (Client ID) for students who are Medicaid eligible. Once the CIN is assigned, a special education professional can enter information in the Medicaid Reimbursement Areas of the system.

66.    The ClearTrack 200 has an "Options" menu. One option is to "Manually Update TCM

Claims." The manual for operating the ClearTrack 200 states that "TCM claims are automatic;

however, if a student does not have a CIN number after a meeting, their meeting may not be

claimed. Running the Manual TCM window every so often will pick up any students that may

fall into this circumstance. Every three months a message will display as a reminder, if the

manual TCM has not been run. . . To run, click the **Create Medicaid Records** button."

(emphasis in original) Accordingly, if a student has a CIN, TCM is automatically billed.

ClearTrack 200 also reminds providers every three months to manually update the CIN so it can

automatically generate a TCM claim if a CIN was not available when TCM reimbursement could

have first been claimed.

67.    After listing the various Medicaid reimbursable services, *e.g.,* physical therapy,

psychological/counseling services and TCM, the ClearTrack 200 manual notes that "When a

student transitions from preschool to school-aged, a New Referral meeting can be scheduled for

the student in Agenda. When this happens for a Medicaid student, a **TCM Reevaluation**

**Review** will be automatically created, even though the meeting type will still be a New Referral.

The system will take the New Referral meeting and automatically change it to a TCM

Reevaluation. If the student did not receive evaluations for their meeting, you should manually

change TCM Reevaluation Review to TCM Requested Review." (Emphasis in original). Again,

the Clear Track 200 automatically generates a TCM claim for all new school-aged children, and

in order to reverse a TCM claim that did not occur, the provider must affirmatively enter the

system and manually reverse the claim that was automatically generated. Upon information and

belief, special education professionals are not manually reversing a TCM reimbursement claim

when appropriate.

68.    The ClearTrack 200 manual further notes that "Part 200 will **automatically** create the

appropriate Targeted Case Management transaction records for any student with CIN numbers

who have CSE (Committee on Special Education) meetings that are held and closed with

meeting types of New Referral, Annual, Reevaluation, Amendment, Transfer/Intake,

Manifestation Determination, or Program Review.  If you need to create past TCM records, run

Manually Update TCM Claims from the Options menu." (Emphasis in original).  Accordingly,

again, the software was designed to default to generate a TCM Medicaid claim and record even

if no such services were ever provided.

**Representative Sample of False Claims**

69.    A male child with autism ("Child X") attends special education programs as a result of

recommendations of the Committee on Special Education and Board of Education action of the

Taconic Hills Central School District ("Taconic Hills").

70.    The parents of Child X requested his Medicaid Explanation of Benefits ("EOB") on April

30, 2009 and December 24, 2010.

71.    All Medicaid billing entries by Taconic Hills on the EOBs are dated on the first of every

month.

72.    Medicaid requires all billing for services to occur after the service has been provided.

73.    Taconic Hills billed Medicaid for TCM repeatedly under codes 5492 for CMCM annual

IEP Review, 5493 for CMCM triennial IEP Review, and 5494 for CMCM requested IEP

Review.

74.    At no time were the parents informed or aware that their autistic child was provided with

TCM services.

20

75.    At no time was an individual identified to the parents as the child's designated Case Manager.

76.    Taconic Hills billed Medicaid for TCM for Child X on the following dates and for the following amounts:

- April 1, 2005        Code 5494 (Requested IEP Review)        $520.00

- July 1, 2005        Code 5494        $520.00

- March 1, 2006        Code 5494        $520.00

- May 1, 2006        Code 5494        $520.00

- June 1, 2006        Code 5492 (Annual IEP Review)        $265.00

- February 1, 2007    Code 5494        $520.00

- March 1, 2007        Code 5494        $520.00

- June 1, 2007        Code 5494        $520.00

- June 1, 2008        Code 5492        $265.00

- October 1, 2008    Code 5494        $520.00

- November 1, 2008 Code 5493 (Triennial IEP Review)        $492.00

77.    In the thirty-day period prior to the above billing days, no TCM services were provided to Child X or his parents.

78.    Upon information and belief, each of the other School Districts that used ClearTrack 200 similarly used the software to fraudulently bill Medicaid for TCM services that were never provided.

### New York City Department of Education's Fraudulent Billing for TCM

79.    Although the New York City Department of Education does not perform TCM services, the New York City Department of Education routinely bills Medicaid for TCM services.

21

80.     For administrative purposes, the New York City Department of Education is divided into

Regions and further divided into Districts. The Special Education Administrator for Districts 13,

14, 15, 16, 19, 23 and 32, whose duties include representing the Department of Education at

hearings in which parents of special education children challenge the classification, evaluation,

program or placement of a child with a disability, denies any familiarity with the term "Targeted

Case Management."

81.     The New York City Special Education Administrator surmised that the only way a child

would receive TCM services, would be as a result of an impartial hearing, mediation or other

dispute resolution process involving the parents and school principal.

82.     Upon information and belief, the New York City Department of Education,

systematically makes claims to Medicaid for TCM services without ever providing such services.

**Representative False Claims for False and Fraudulent Schemes to
Improperly Bill Medicaid for Speech Pathology, Physical Therapy and
Occupational Therapy Services**

83.     From November 1, 2006 to May 9, 2009, Child X attended the Anderson School based

on a placement decision of the Taconic Hills Committee on Special Education.

84.     On October 8, 2009, an Impartial Hearing Officer ordered Taconic Hills to provide the

following services to make-up for services denied Child X during the 2007-2008 and 2008-2009

school years while attending the Anderson School:

- Speech/Language Therapy    30-minute sessions        61 sessions
- Occupational Therapy        30-minute sessions        129 sessions
- Physical Therapy            30-minute sessions        29 sessions

85.     While Child X was in attendance at the Anderson School, Taconic Hills billed Medicaid

for multiple units of the following services:

22

- Physical Therapy       Code 5328          $430.00
- Occupational Therapy Code 5330          $422.00
- Speech Therapy        Code 5326          $432.00
- Special Transportation Code 5496         varying amounts

86.    Neither the Anderson School nor Taconic Hills have session notes documenting that the services billed were actually provided for Child X.

87.    On September 1, 2005, Taconic Hills billed Medicaid $223.00 for psychological services for Child X under code 5329.

88.    Upon information and belief, based on a lack of documentation and other reasons, no psychological counseling services were provided to Child X by Taconic Hills.

89.    Because Child X has severe communication deficits, it would be unlikely that any meaningful psychological counseling could have been provided to Child X.

90.    On August 6, 2009 legal counsel for Taconic Hills stated as follows:

> Well I think target I think I think, don't quote me on this.  I think targeted case
> manager, case manager is a is a term of art that comes out of Medicaid.  And hum
> I have asked cause I work with a lot of Medicaid gurus who really do the
> Medicaid billing and whatever, I'm gonna ask them again for God's sake I ask
> him all the time.  Uhm to give me a very clear definition of what a case manager
> is in Medicaid jargon.  What is their role?  What do they do?  Other than, if you
> will coordinate services you know that are Medicaid reimbursable and make sure
> that the paperwork is all correct.  And I I'd like to think they do more but you
> know I I've never been given any definitive answer that they really serve a
> programmatic function.

23

> And the reason they go on there, and it's weird. Because I gotta tell ya there are
>
> there are committees that just put case manager on there willy nilly because they
>
> don't know whether something is gonna be Medicaid billing and they just do it.
>
> And it doesn't make me feel really you know comfortable. But this was
>
> apparently a real function and it was a programmatic service.

91.    Legal counsel for Taconic Hills stated further that the School District was not billing

Medicaid for TCM services for Child X.

## FIRST CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(A))
### Presenting False Claims for Payment

92.    The United States and Relators incorporate by reference the above paragraphs as if fully

set forth herein.

93.    The United States seeks relief against Defendants under Section 3729(a)(1)(A) of the

False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

94.    As set forth above, Defendants knowingly presented, or caused to be presented, false and

fraudulent claims for payment or approval in connection with the submission of claim for school-

based services for students with developmental disabilities.

95.    Medicaid paid school districts, counties or municipalities New York State and Federal

funds because of Defendants' fraudulent conduct.

96.    By reason of Defendants' false claims, the New York State and the United States have

been damaged in a substantial amount to be determined at trial.

## SECOND CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(B))
### Use of False Statements

97.     The United States and Relators incorporate by reference the above paragraphs above as if fully set forth herein.

98.     The United States seeks relief against Defendants under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

99.     Defendants, knowingly made, used, or caused to be made and used, false records and statements material to a false or fraudulent claim paid or approved in connection with the submission of claim for school-based services for students with developmental disabilities.

100.    The Medicaid Program paid such false or fraudulent claims because of Defendants' acts and conduct.

101.    By reason of Defendants' causation to make or use false claims, the United States has been damaged in a substantial amount to be determined at trial.

## THIRD CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(G))
### Use of False Statements

102.    The United States and Relators incorporate by reference the paragraphs above as if fully set forth herein.

103.    The United States seeks relief against Defendants under Section § 3729(1) (G) of the False Claims Act, 31 U.S.C. § 3729(a) (1) (G).

104.    As set forth above, Defendants, knowingly made, used, and caused to be made and used, false records and statements material to an obligation to pay or transmit money or property to the

25

Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

105.    Defendants failed to pay or transmit money due to the United States because of Defendants' acts and conduct.

106.    By reason of the Defendants' use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

## FOURTH CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a) (1) (C))
### Conspiracy to Commit a Violation of the False Claims Act

107.    The United States and Relators incorporate by reference the paragraphs above as if fully set forth herein.

108.    The United States seeks relief against Defendants under Section § 3729(1) (C) of the False Claims Act, 31 U.S.C. § 3729(a) (1) (C).

109.    As set forth above, Defendants conspired to commit a violation of subparagraph (A), (B) and (G) of the False Claims Act.

110.    Defendants have committed at least one overt act in furtherance of their conspiracy.

111.    By reason of the Defendants' conspiracy, the United States has been damaged in a substantial amount to be determined at trial.

WHEREFORE, plaintiff the United States *ex rel.* John and Jane Doe request that judgment be entered in their favor and against Defendants as follows:

(a)     On the First, Second, Third and Fourth Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a) (1) (A), (B) (C) and (G), for treble the United States' damages, in an amount to be determined at trial, and an

$11,000 penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants; and

(b)    Awarding John and Jane Doe their relator's share pursuant to 31 U.S.C. § 3730(d) (1) or (2); and

(c)    On the First, Second, Third and Fourth Claims for Relief, an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d); and

(d)    Awarding such further relief as is proper.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York
     April 18, 2011

        DIAMOND MCCARTHY LLP

By: _____

        Robert W. Sadowski
        Sheila Gowan
        Raphael Katz
        New York Times Building
        620 8th Avenue, 39th Floor
        New York, New York  10018
        Telephone: (212) 430-5407
        Facsimile: (212) 430-5417
        rsadowski@diamondmccarthy.com

        Law Office of Andrew K. Cuddy

By: _____ FOR

        Andrew K. Cuddy
        145 E. Genesee Street
        Auburn, New York  13021
        Tel. No.: (716) 868-9103

        Attorneys for the United States of America
        *ex rel.* John and Jane Doe

TO:

United States Attorney
for the Southern District of New York
86 Chambers Street
New York, New York

Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

## U.S. ex rel. John and Jane Doe v. School Districts of New York State, et al., APPENDIX A

**School Districts of New York State**

ADDISON CENTRAL SCHOOL DISTRICT

ADIRONDACK CENTRAL SCHOOL DISTRICT

ALBANY CITY SCHOOL DISTRICT

ALBION CENTRAL SCHOOL DISTRICT

ALDEN CENTRAL SCHOOL DISTRICT

ALLEGANY- LIMESTONE CENTRAL SCHOOL DISTRICT

ALTMAR-PARISH-WILLIAMSTOWN CENTRAL SCHOOL DISTRICT

AMHERST CENTRAL SCHOOL DISTRICT

AMITYVILLE UNION FREE SCHOOL DISTRICT

AMSTERDAM CITY SCHOOL DISTRICT

ANDOVER CENTRAL SCHOOL DISTRICT

ARGYLE CENTRAL SCHOOL DISTRICT

ARLINGTON CENTRAL SCHOOL DISTRICT

ATTICA CENTRAL SCHOOL DISTRICT

AUBURN CITY SCHOOL DISTRICT

AUSABLE VALLEY CENTRAL SCHOOL DISTRICT

AVERILL PARK CENTRAL SCHOOL DISTRICT

AVOCA CENTRAL SCHOOL DISTRICT

AVON CENTRAL SCHOOL DISTRICT

BAINBRIDGE-GUILFORD CENTRAL SCHOOL DISTRICT

BALDWINSVILLE CENTRAL SCHOOL DISTRICT

BALLSTON SPA CENTRAL SCHOOL DISTRICT

BARKER CENTRAL SCHOOL DISTRICT

BATAVIA CITY SCHOOL DISTRICT

BATH CENTRAL SCHOOL DISTRICT

BAY SHORE UNION FREE SCHOOL DISTRICT

BEACON CITY SCHOOL DISTRICT

BEEKMANTOWN CENTRAL SCHOOL DISTRICT

BERLIN CENTRAL SCHOOL DISTRICT

BERNE-KNOX-WESTERLO CENTRAL SCHOOL DISTRICT

BETHLEHEM CENTRAL SCHOOL DISTRICT

BINGHAMTON CITY SCHOOL DISTRICT

BRASHER FALLS CENTRAL SCHOOL DISTRICT

BRENTWOOD UNION FREE SCHOOL DISTRICT

BREWSTER CENTRAL SCHOOL DISTRICT

BRIDGEWATER-WEST WINFIELD CENTRAL SCHOOL DISTRICT (MT. M

BROADALBIN-PERTH CENTRAL SCHOOL DISTRICT

BROCKPORT CENTRAL SCHOOL DISTRICT

BRUNSWICK CENTRAL SCHOOL DISTRICT (BRITTONKILL)

BRUSHTON-MOIRA CENTRAL SCHOOL

BUFFALO CITY SCHOOL DISTRICT

BURNT HILLS-BALLSTON LAKE CENTRAL SCHOOL DISTRICT

CAIRO-DURHAM CENTRAL SCHOOL DISTRICT

CAMDEN CENTRAL SCHOOL DISTRICT

CANAJOHARIE CENTRAL SCHOOL DISTRICT

CANANDAIGUA CITY SCHOOL DISTRICT

CANASTOTA CENTRAL SCHOOL DISTRICT

CANISTEO CENTRAL SCHOOL DISTRICT

CANTON CENTRAL SCHOOL DISTRICT

CARTHAGE CENTRAL SCHOOL DISTRICT

CASSADAGA VALLEY CENTRAL SCHOOL DISTRICT

CATSKILL CENTRAL SCHOOL DISTRICT

CATTARAUGUS-LITTLE VALLEY CENTRAL SCHOOL DISTRICT

CENTRAL ISLIP UNION FREE SCHOOL DISTRICT

CENTRAL SQUARE CENTRAL SCHOOL DISTRICT

CHATEAUGAY CENTRAL SCHOOL DISTRICT

CHATHAM CENTRAL SCHOOL DISTRICT

CHAZY UNION FREE SCHOOL DISTRICT

CHENANGO VALLEY CENTRAL SCHOOL DISTRICT

CHITTENANGO CENTRAL SCHOOL DISTRICT

CHURCHVILLE-CHILI CENTRAL SCHOOL DISTRICT

CLARKSTOWN CENTRAL SCHOOL DISTRICT

CLEVELAND HILL UNION FREE SCHOOL DISTRICT

CLYDE-SAVANNAH CENTRAL SCHOOL DISTRICT

COHOES CITY SCHOOL DISTRICT

COPIAGUE UNION FREE SCHOOL DISTRICT

CORINTH CENTRAL SCHOOL DISTRICT

CORNING CITY SCHOOL DISTRICT

CORTLAND CITY SCHOOL DISTRICT

COXSACKIE-ATHENS CENTRAL SCHOOL DISTRICT

CUBA-RUSHFORD CENTRAL SCHOOL DISTRICT

DALTON-NUNDA CENTRAL SCHOOL DISTRICT (KESHEQUA)

DANSVILLE CENTRAL SCHOOL DISTRICT

DEER PARK UNION FREE SCHOOL DISTRICT

DELHI CENTRAL SCHOOL DISTRICT

DEPEW UNION FREE SCHOOL DISTRICT

DEPOSIT CENTRAL SCHOOL DISTRICT

DRYDEN CENTRAL SCHOOL DISTRICT

DUNKIRK CITY SCHOOL DISTRICT

EAST AURORA UNION FREE SCHOOL DISTRICT

EAST GREENBUSH CENTRAL SCHOOL DISTRICT

EAST IRONDEQUOIT CENTRAL SCHOOL DISTRICT

EAST MEADOW UNION FREE SCHOOL DISTRICT

EAST RAMAPO CENTRAL SCHOOL DISTRICT (SPRING VALLEY)

EAST ROCHESTER UNION FREE SCHOOL DISTRICT

EAST SYRACUSE-MINOA CENTRAL SCHOOL DISTRICT

EDWARDS-KNOX CENTRAL SCHOOL DISTRICT

ELLENVILLE CENTRAL SCHOOL DISTRICT

ELMIRA CITY SCHOOL DISTRICT

ELMIRA HTS CENTRAL SCHOOL DISTRICT

4

EVANS-BRANT CENTRAL SCHOOL DISTRICT (LAKE SHORE)

FAIRPORT CENTRAL SCHOOL DISTRICT

FALCONER CENTRAL SCHOOL DISTRICT

FALLSBURG CENTRAL SCHOOL DISTRICT

FARMINGDALE UNION FREE SCHOOL DISTRICT

FAYETTEVILLE-MANLIUS CENTRAL SCHOOL

FILLMORE CENTRAL SCHOOL DISTRICT

FONDA-FULTONVILLE CENTRAL SCHOOL DISTRICT

FORT EDWARD UNION FREE SCHOOL DISTRICT

FORT PLAIN CENTRAL SCHOOL DISTRICT

FRANKFORT-SCHUYLER CENTRAL SCHOOL DISTRICT

FRANKLINVILLE CENTRAL SCHOOL DISTRICT

FREEPORT UNION FREE SCHOOL DISTRICT

FRONTIER CENTRAL SCHOOL DISTRICT

FULTON CITY SCHOOL DISTRICT

GATES-CHILI CENTRAL SCHOOL DISTRICT

GENERAL BROWN CENTRAL SCHOOL DISTRICT

GENEVA CITY SCHOOL DISTRICT

GLEN COVE CITY SCHOOL DISTRICT

GLENS FALLS CITY SCHOOL DISTRICT

GLOVERSVILLE CITY SCHOOL DISTRICT

GOSHEN CENTRAL SCHOOL DISTRICT

GOUVERNEUR CENTRAL SCHOOL DISTRICT

GOWANDA CENTRAL SCHOOL DISTRICT

GRANVILLE CENTRAL SCHOOL DISTRICT

GREAT NECK UNION FREE SCHOOL DISTRICT

GREECE CENTRAL SCHOOL DISTRICT

GREENBURGH CENTRAL SCHOOL DISTRICT

GREENE CENTRAL SCHOOL DISTRICT

GROTON CENTRAL SCHOOL DISTRICT

GUILDERLAND CENTRAL SCHOOL DISTRICT

HAMBURG CENTRAL SCHOOL DISTRICT

HANNIBAL CENTRAL SCHOOL DISTRICT

HARPURSVILLE CENTRAL SCHOOL DISTRICT

HAVERSTRAW-STONY POINT CENTRAL SCHOOL DISTRICT

HEMPSTEAD UNION FREE SCHOOL DISTRICT

HERKIMER CENTRAL SCHOOL DISTRICT

HILTON CENTRAL SCHOOL DISTRICT

HINSDALE CENTRAL SCHOOL DISTRICT

HOMER CENTRAL SCHOOL DISTRICT

HOOSIC VALLEY CENTRAL SCHOOL DISTRICT

HORNELL CITY SCHOOL DISTRICT

HORSEHEADS CENTRAL SCHOOL DISTRICT

HUDSON CITY SCHOOL DISTRICT

HUDSON FALLS CENTRAL SCHOOL DISTRICT

HUNTINGTON UNION FREE SCHOOL DISTRICT

HYDE PARK CENTRAL SCHOOL DISTRICT

ILION CENTRAL SCHOOL DISTRICT

INDIAN RIVER CENTRAL SCHOOL DISTRICT

IROQUOIS CENTRAL SCHOOL DISTRICT

ITHACA CITY SCHOOL DISTRICT

JAMESTOWN CITY SCHOOL DISTRICT

JAMESVILLE -DEWITT CENTRAL SCHOOL DISTRICT

JOHNSON CITY CENTRAL SCHOOL DISTRICT

JOHNSTOWN CITY SD

JORDAN-ELBRIDGE CENTRAL SCHOOL DISTRICT

KENMORE-TONAWANDA UNION FREE SCHOOL DISTRICT

KINDERHOOK CENTRAL SCHOOL DISTRICT

KINGSTON CITY SCHOOL DISTRICT

KIRYAS JOEL VILLAGE UNION FREE SCHOOL DISTRICT

LACKAWANNA CITY SCHOOL DISTRICT

LAKELAND CENTRAL SCHOOL DISTRICT

LAKE PLACID CENTRAL SCHOOL DISTRICT

LANCASTER CENTRAL SCHOOL DISTRICT

LANSINGBURGH CENTRAL SCHOOL DISTRICT

LIBERTY CENTRAL SCHOOL DISTRICT

LINDENHURST UNION FREE SCHOOL DISTRICT

LITTLE FALLS CITY SCHOOL DISTRICT

LIVERPOOL CENTRAL SCHOOL DISTRICT

LOCKPORT CITY SCHOOL DISTRICT

LONG BEACH CITY SCHOOL DISTRICT

LONGWOOD CENTRAL SCHOOL DISTRICT

LOWVILLE ACAD & CENTRAL SCHOOL DISTRICT

LYONS CENTRAL SCHOOL DISTRICT

MADISON CENTRAL SCHOOL DISTRICT

MAINE-ENDWELL CENTRAL SCHOOL DISTRICT

MALONE CENTRAL SCHOOL DISTRICT

MARION CENTRAL SCHOOL DISTRICT

MASSENA CENTRAL SCHOOL DISTRICT

MAYFIELD CENTRAL SCHOOL DISTRICT

MEDINA CENTRAL SCHOOL DISTRICT

MEXICO CENTRAL SCHOOL DISTRICT \

MIDDLE COUNTRY CENTRAL SCHOOL DISTRICT

MIDDLEBURGH CENTRAL SCHOOL DISTRICT

MIDDLETOWN CITY SCHOOL DISTRICT

MINISINK VALLEY CENTRAL SCHOOL DISTRICT

MOHAWK CENTRAL SCHOOL DISTRICT

MOHONASEN CENTRAL SCHOOLD DISTRICT

MONTICELLO CENTRAL SCHOOL DISTRICT

MORIAH CENTRAL SCHOOL DISTRICT

MORRISVILLE-EATON CENTRAL SCHOOL DISTRICT

MOUNT VERNON CITY SCHOOL DISTRICT

NEW ROCHELLE CITY SD

NEWARK CENTRAL SCHOOL DISTRICT

NEWBURGH CITY SCHOOL DISTRICT

NEWFANE CENTRAL SCHOOL DISTRICT

NEWFIELD CENTRAL SCHOOL DISTRICT

NIAGARA FALLS CITY SCHOOL DISTRICT

NIAGARA-WHEATFIELD CENTRAL SCHOOL DISTRICT

NISKAYUNA CENTRAL SCHOOL DISTRICT

NORTH BABYLON UNION FREE SCHOOL DISTRICT

NORTH COLONIE CENTRAL SCHOOL DISTRICT

NORTH SYRACUSE CENTRAL SCHOOL DISTRICT

NORTH TONAWANDA CITY SCHOOL DISTRICT

NORTHEASTERN CLINTON CENTRAL SCHOOL DISTRICT

NORTHPORT-EAST NORTHPORT UNION FREE SCHOOL DISTRICT

NORWICH CITY SCHOOL DISTRICT

NORWOOD-NORFOLK CENTRAL SCHOOL DISTRICT

NEW YORK CITY DEPARTMENT OF EDUCATION

OCEANSIDE UNION FREE SCHOOL DISTRICT

ODESSA-MONTOUR CENTRAL SCHOOL DISTRICT

OGDENSBURG CITY SCHOOL DISTRICT

OLEAN CITY SCHOOL DISTRICT

ONEIDA CITY SCHOOL DISTRICT

ONEONTA CITY SCHOOL DISTRICT

ONTEORA CENTRAL SCHOOL DISTRICT

ORCHARD PARK CENTRAL SCHOOL DISTRICT

OSSINING UNION FREE SCHOOL DISTRICT

OSWEGO CITY SCHOOL DISTRICT

OTEGO-UNADILLA CENTRAL SCHOOL DISTRICT

PATCHOGUE-MEDFORD UNION FREE SCHOOL DISTRICT

PEEKSKILL CITY SCHOOL DISTRICT

PENFIELD CENTRAL SCHOOL DISTRICT

PENN YAN CENTRAL SCHOOL DISTRICT

PERU CENTRAL SCHOOL DISTRICT

PHELPS-CLIFTON SPRINGS CENTRAL SCHOOL DISTRICT

PHOENIX CENTRAL SCHOOL DISTRICT

PINE BUSH CENTRAL SCHOOL DISTRICT

PINE VALLEY CENTRAL SCHOOL DISTRICT (SOUTH DAYTON) PLATTSBURGH CITY SCHOOL DISTRICT

PORT CHESTER-RYE UNION FREE SCHOOL DISTRICT

PORT JERVIS CITY SCHOOL DISTRICT

POTSDAM CENTRAL SCHOOL DISTRICT

POUGHKEEPSIE CITY SCHOOL DISTRICT

PULASKI CENTRAL SCHOOL DISTRICT

QUEENSBURY UNION FREE SCHOOL DISTRICT

RAVENA-COEYMANS-SELKIRK CENTRAL SCHOOL DISTRICT

RED CREEK CENTRAL SCHOOL DISTRICT

RENSSELAER CITY SCHOOL DISTRICT

RIVERHEAD CENTRAL SCHOOL DISTRICT

ROCHESTER CITY SCHOOL DISTRICT

ROCKY POINT UNION FREE SCHOOL DISTRICT

ROME CITY SCHOOL DISTRICT

RONDOUT VALLEY CENTRAL SCHOOL DISTRICT

ROOSEVELT UNION FREE SCHOOL DISTRICT

ROTTERDAM MOHONASEN CENTRAL SCHOOL DISTRICT

RUSH-HENRIETTA CENTRAL SCHOOL DISTRICT

SACHEM CENTRAL SCHOOL DISTRICT

SALAMANCA CITY SCHOOL DISTRICT

SALMON RIVER CENTRAL SCHOOL DISTRICT

SANDY CREEK CENTRAL SCHOOL DISTRICT

SARANAC CENTRAL SCHOOL DISTRICT

SARANAC LAKE CENTRAL SCHOOL DISTRICT

SARATOGA SPRINGS CITY SD

SAUGERTIES CENTRAL SCHOOL DISTRICT

SCHALMONT CENTRAL SCHOOL DISTRICT

SCHENECTADY CITY SCHOOL DISTRICT

SCHODACK CENTRAL SCHOOL DISTRICT

SCHUYLERVILLE CENTRAL SCHOOL DISTRICT

SCOTIA-GLENVILLE CENTRAL SCHOOL DISTRICT

SEWANHAKA CENTRAL HS DISTRICT

SHENENDEHOW A CENTRAL SCHOOL DISTRICT

SHERBURNE-EARLVILLE CENTRAL SCHOOL DISTRICT

SHERRILL CITY SCHOOL DISTRICT

SIDNEY CENTRAL SCHOOL DISTRICT

SMITHTOWN CENTRAL SCHOOL DISTRICT

SODUS CENTRAL SCHOOL DISTRICT

SOLVAY UNION FREE SCHOOL DISTRICT

SOUTH COLONIE CENTRAL SCHOOL DISTRICT

SOUTH COUNTRY CENTRAL SCHOOL DISTRICT

SOUTH GLENS FALLS CENTRAL SCHOOL DISTRICT

SOUTH HUNTINGTON UNION FREE SCHOOL DISTRICT

SOUTH LEWIS CENTRAL SCHOOL DISTRICT

SOUTH SENECA CENTRAL SCHOOL DISTRICT

SOUTHWESTERN CENTRAL SCHOOL DISTRICT AT JAMESTOWN SPENCERPORT
CENTRAL SCHOOL DISTRICT

SPENCER-VAN ETTEN CENTRAL SCHOOL DISTRICT

SPRINGVILLE-GRIFFITH INST CENTRAL SCHOOL DISTRICT

STARPOINT CENTRAL SCHOOL DISTRICT

SUSQUEHANNA VALLEY CENTRAL SCHOOL DISTRICT

SWEET HOME CENTRAL SCHOOL DISTRICT

SYRACUSE CITY SCHOOL DISTRICT

TACONIC HILLS CENTRAL SCHOOL DISTRICT

TICONDEROGA CENTRAL SCHOOL DISTRICT

TONAWANDA CITY SCHOOL DISTRICT

TROY CITY SCHOOL DISTRICT

TUPPER LAKE CENTRAL SCHOOL DISTRICT

UNADILLA VALLEY CENTRAL SCHOOL DISTRICT

UNIONDALE UNION FREE SCHOOL DISTRICT

UNION-ENDICOTT CENTRAL SCHOOL DISTRICT

UTICA CITY SCHOOL DISTRICT

VALLEY CENTRAL SCHOOL DISTRICT (MONTGOMERY)

VESTAL CENTRAL SCHOOL DISTRICT

WALLKILL CENTRAL SCHOOL DISTRICT

WALTON CENTRAL SCHOOL DISTRICT

WAPPINGERS CENTRAL SCHOOL DISTRICT

WARRENSBURG CENTRAL SCHOOL DISTRICT

WARSAW CENTRAL SCHOOL DISTRICT

WASHINGTONVILLE CENTRAL SCHOOL DISTRICT

WATERFORD-HALFMOON UNION FREE SCHOOL DISTRICT

WATERLOO CENTRAL SCHOOL DISTRICT

WATERTOWN CITY SCHOOL DISTRICT

WATERVILLE CENTRAL SCHOOL DISTRICT

WATERVLIET CITY SCHOOL DISTRICT

WATKINS GLEN CENTRAL SCHOOL DISTRICT

WAVERLY CENTRAL SCHOOL DISTRICT

WAYLAND-COHOCTON CENTRAL SCHOOL DISTRICT

WEBSTER CENTRAL SCHOOL DISTRICT

WELLS CENTRAL SCHOOL DISTRICT

WELLSVILLE CENTRAL SCHOOL DISTRICT

WEST BABYLON UNION FREE SCHOOL DISTRICT

WEST CANADA V ALLEY CENTRAL SCHOOL DISTRICT

WEST GENESEE CENTRAL SCHOOL DISTRICT

WEST SENECA CENTRAL SCHOOL DISTRICT

WESTBURY UNION FREE SCHOOL DISTRICT

WHITE PLAINS CITY SCHOOL DISTRICT

WHITEHALL CENTRAL SCHOOL DISTRICT

WHITESBORO CENTRAL SCHOOL DISTRICT

WHITNEY POINT CENTRAL SCHOOL DISTRICT

WILLIAM FLOYD UNION FREE SCHOOL DISTRICT

WILLIAMSON CENTRAL SCHOOL DISTRICT

WILLIAMSVILLE CENTRAL SCHOOL DISTRICT

WILSON CENTRAL SCHOOL DISTRICT

WYANDANCH UNION FREE SCHOOL DISTRICT

YONKERS CITY SCHOOL DISTRICT

YORKSHIRE-PIONEER CENTRAL SCHOOL DISTRICT

**<u>U.S. ex rel. John and Jane Doe v. School Districts of New York State, et al.,</u>**
**APPENDIX B**
**Counties of New York State**

**Albany County**

**Allegany County**

**Broome County**

**Cattaraugus County**

**Cayunga County**

**Chautauqua County**

**Chemung County**

**Chenango County**

**Clinton County**

**Columbia County**

**Cortland County**

**Delaware County**

**Dutchess County**

**Erie County**

**Essex County**

**Franklin County**

**Fulton County**

**Genesee County**

**Greene County**

**Hamilton County**

**Herkimer County**

**Jefferson County**

**Lewis County**

**Livingston County**

**Madison County**

**Monroe County**

**Montgomery County**

**Nassau County**

**Oneida County**

**Onondaga County**

**Ontario County**

**Orange County**

**Orleans County**

**Oswego County**

**Otsego County**

**Putnam County**

**Rensselaer County**

**Rockland County**

**Saratoga County**

**Schenectady County**

**Schoharie County**

**Schuyler County**

**Seneca County**

**Steuben County**

**St. Lawrence County**

**Suffolk County**

**Sullivan County**

**Tioga County**

**Tompkins County**

**Ulster County**

**Warren County**

**Washington County**

**Wayne County**

**Wyoming County**

**Yates County**